UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS


UNITED STATES OF AMERICA,          )   CR. No. 04-10336-NMG
                                   )
                 Plaintiff         )
                                   )
      v.                           )
                                   )
                                   )
EDWIN TORRES                       )
                 Defendant.        )
_____)

               **MOTION TO SUPPRESS EVIDENCE SEIZED AT**
            **3 FOUNDRY ST, STORAGE UNIT J1, LOWELL, MA**
 (Request for Evidentiary Hearing)

   COMES NOW DEFENDANT EDWIN TORRES by and through his attorney of record, who hereby moves this Honorable Court for an Order suppressing as evidence all items seized on or about October 15, 2004, from the property located at 3 Foundry St, Storage Unit J1, Lowell, MA and all fruits thereof.

   This motion is made on the ground that said search and seizure was made without a warrant, without probable cause and without lawful consent.

   This motion is based on the below memorandum of points and authorities, the attached affidavit, and all evidence that may be presented at a hearing on this motion.

                          Preliminary Statement

   On October 15, 2004 members of the DEA executed a search warrant for "[t]he first floor of the storage building located at Mini Self Storage, 3 Foundry Street, Lowell Massachusetts [*further description omitted*] located in the left rear portion of the lot.

It is located in a two story building with dark colored metal siding on the front end of the building.  A blue and white sign with the words, MINI SELF STORAGE Tel 978-453-8206, printed on it, is located on the top right corner of the building..."

On the same day at 6:00 AM, agents of the DEA arrested EDWIN TORRES at his home at 219 Blackbrook Drive, Lowell pursuant to a warrant.  Agents requested and were given keys to the storage facility which was the subject of the above warrant by Mr. TORRES, daughter, Yasenia TORRES, or they were seized from Mr. TORRES.  On the key ring were additional keys for storage unit J1.

During the execution of the above referred to warrant, the agents utilized the seized keys to open both the location authorized by the warrant and the separate storage unit J1.  There was no warrant for unit J1, nor any consent to such search.

## Analysis

Under the Fourth Amendment a search conducted by law enforcement officers must rest upon a search warrant, Stoner v. California, 376 U.S. 483 (1964), unless it clearly falls within a recognized exception. See Schneckloth v. Bustamonte, 412 U.S. 218 (1973) (consent); Roaden v. Kentucky, 413 U.S. 496 (1973) (exigent circumstances plus probable cause); Michigan v. DeFillippo, 443 U.S.31 (1979) (search incident to lawful arrest); Warden v. Hayden, 387 U.S. 294 (1967) (hot pursuit); South Dakota v. Opperman, 428 U.S. 364 (1976) (inventory).

In the case at bar the only theory that the government could submit to justify the search of the storage unit that was not identified in the warrant is consent. However, one is hard pressed to conceive of any factual basis for such an argument. According to the DEA 6 of TFA Brian Proulx the keys for storage unit J1 were "seized" from Edwin TORRES by TFA Kevin Swift. According to the DEA 6 of TFA Swift, Edwin TORRES "denied knowledge of any storage space" however, Yasenia Torres, EDWIN's 17 year old daughter, identified a key ring and reportedly said that items therein were furniture and clothing belonging to her mother Elizabeth Torres. Reportedly, "[t]hese keys were given to TFA Proulx in an attempt to gain entry to this storage area without causing damage." Any suggestion that such amounts to a consent to search storage unit J1, that was not identified in the warrant, strains credulity.

In Florida v. Royer, 460 U.S. 491 (1983), the Supreme Court recognized that "where the validity of a search rests on consent, the government has the burden of proving, by a preponderance of the evidence, that the necessary consent was freely and voluntarily given, a burden that is not satisfied by showing a mere submission to a claim of lawful authority." 460 U.S. at 497 (citations omitted). See also United States v. Jones, 641 F.2d 425, 429 (6th Cir. 1981) ("the mere expression of approval to [a] search" is insufficient to constitute a valid consent); Higgins v. United States, 209 F.2d 819, 820 (D.C. Cir. 1954) (holding that a suspect who allowed police to enter his room and "look around," resulting

3

in the discovery of marijuana, had not consented; but rather, merely had acquiesced); United States v. Judd, 190 F.2d 649, 651 (D.C. Cir. 1951) (holding that an arrestee's statement to the police that he "had nothing to conceal or hide" and his permission to the police to "go out to [his home]" after the police told him that they were looking for tools and a pair of shoes relevant to a burglary, did not constitute a consent to the search and recognizing that "[n]on-resistance to the orders or suggestions of the police is not infrequent ...; true consent, free of fear or pressure, is not so readily to be found"). Other cases have also recognized that acquiescence to authority is an insufficient basis upon which to justify a search. Bumper v. North Carolina, 391 U.S. at 548-49. Cf. Buffkins v. City of Omaha, Douglas County Nebraska, 922 F.2d 465 (8th Cir. 1990), cert. denied, U.S. , 112 S.Ct. 273 (1991); United States v. Berry, 670 F.2d 583, 596 (5th Cir. 1982); United States v. Anile, 352 F. Supp. 14, 18 (N.D.W.Va. 1973). Cf. Cipres v. United States, 343 F.2d 95 (9th Cir. 1965), cert. denied, 385 U.S. 826 (1966) (verbal assent to search of luggage not sufficient to establish consent, and permission to search bag "'obtained under color of the badge'" was "presumptively coerced") (citations omitted) cited in United States v. Kelly, 913 F.2d 261, 266-67 (6th Cir. 1990).

Where the government asserts that consent is based on common authority over the area searched, the government bears the burden of proving that the officers have an objectively reasonable basis

4

for an understanding that a third person (such as a family member) had authority to consent to the search, see Illinois v. Rodriguez, 497 U.S. 177, 186 (1990). Even when valid third party consent is given, it would not be consent to search containers within the searched area. See United States v. Robinson, 99 F.Supp. 155, 159-160 (D.C. Mass. 1998).

The accused's cultural background and alienage have also been recognized as relevant factors in determining the voluntariness of a suspect's consent to search. Cf. United States v. Recalde, 761 F.2d 1448, 1454 (10th Cir. 1985) ("undisputed testimony" regarding accused's "upbringing and experiences" in foreign country which "had instilled in him an acquiescence to police authority" was "certainly relevant to the issue of coercion" to consent). See also United States v. Gallegos-Zapata, 630 F.Supp. 665 (D. Mass. 1986).

When an entry is demanded under claim of general governmental authority and the officers are without a search or arrest warrant, the action is "colorably lawful" coercion. See Bumper v. North Carolina, 391 U.S. 543 (1968) (officers claimed falsely that they had a search warrant--submission to a claim of lawful authority did not generate a permissible or valid consent); Amos v. United States 255 U.S. 313 (1921) (entry demanded by federal agents into home without warrant); United States v. Rodriguez, 525 F.2d 1313 (10th Cir. 1975) (acquiescence to a claim of valid authority not enough).

In the case at bar there is no conceivable basis on which the agents could claim consent. They seized the keys for Unit J1 from

5

Mr. TORRES and/or his daughter's possession at the time of Mr. TORRES's arrest without a warrant or even any colorable claim of consent.  The stated purpose, according to the DEA 6's, was to prevent damage to the storage unit identified in the warrant. Once the keys were acquired the agents presumptively located a key on the key ring seized for storage unit J1, and thereafter carried out the search and seizure of items from said unit which is the subject of this motion.

    WHEREFORE, Defendant, EDWIN TORRES, respectfully moves this Honorable Court to grant the motion to suppress for all items seized at Unit J1, Mini Self Storage, 3 Foundry Street, Lowell Massachusetts,  and all fruits thereof.

    Date: April 12, 2005     Respectfully submitted,

                        BOURBEAU & BONILLA

                        S/ *Victoria M. Bonilla*

                        VICTORIA M. BONILLA  
                        77 Central Street, 2nd Floor  
                        Boston, MA 02109  
                        (617) 350-6868  
                        Attorney for Defendant  
                        EDWIN TORRES

**Affidavit of Victoria M. Bonilla**

I, Victoria M. Bonilla, on oath, swear and affirm that:

I am the attorney appointed pursuant to the Criminal Justice Act by this Honorable Court to represent EDWIN TORRES. This affidavit is being submitted on his behalf based on information and belief obtained from the DEA reports that have been disclosed by the government. If necessary, an affidavit directly from Mr. TORRES will be produced at a hearing on this motion.

According to the documents produced in discovery the search warrant was for a particular storage building at a Mini Storage facility in Lowell. The search warrant was not for Unit J1. In order to prevent damage to the building the agents sought and obtained the keys for the unit from the TORRES's. The keys were obtained from either Mr. TORRES or his daughter. At no time did Mr. TORRES consent to the search of Unit J1.

I declare under penalty of perjury that the foregoing is true and correct.

S/ *Victoria M. Bonilla*
_____
Victoria M. Bonilla