UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) Criminal No. 04-10336-NMG |
| EDWIN TORREZ (8) | ) |
| a/k/a "Coqui" | ) |
| Defendant | ) |

### GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by its attorneys, Michael J. Sullivan, United States Attorney for the District of Massachusetts, and William F. Bloomer, Assistant U.S. Attorney, submits its Sentencing Memorandum with respect to Edwin Torrez ("Torrez").

### INTRODUCTION

*Defendant Torrez was a midlevel dealer in a massive heroin distribution organization. He obtained a total of 76 grams of heroin from Julio Santiago in approximate 20-gram increments on four occasions from June to September of 2004. At the conclusion of the investigation on October 15, 2004, agents searched a storage facility belonging to Torres and found a digital scale, a diluent ("cut"), numerous plastic baggies bearing an "It's Hot" imprint that identified his specific street brand of heroin, spoons, and plastic bags bearing an apple logo -- the same type of bags found in the possession of two other mid-level heroin distributors within the organization. For the reasons provided below, the government recommends a sentence of incarceration at the low-end of the advisory guideline range of 30 months. Such a recommendation is entirely reasonable in the circumstances of this case, United States v. Jiminenez-Beltre, 440 F.3d 514, 518 (1st Cir. 2006)(en banc), if not downright gracious.*

To determine a defendant's final sentence, this Court must follow the three-step sentencing approach espoused by the First Circuit. United States v. Dixon, 449 F.3d 194, 204 (1st Cir. 2006); United States v. Jiménez-Beltre, 440 F.3d 514, 518 (1st Cir. 2006) (en banc); United States v. Robinson, 433 F.3d 31, 35 (1st Cir. 2005). First, this Court must calculate the advisory guideline range. E.g., United States v. Pho, 433 F.3d 53, 61 (1st Cir. 2006). Second, the Court must determine whether any traditional departures apply to the case at hand. E.g.,

United States v. Saez, 444 F.3d 15, 17 (1st Cir. 2006). Finally, the Court needs to determine whether any factors put forth in 18 U.S.C. § 3553(a) offer a persuasive reason to impose a sentence outside of the proposed guideline range. E.g., Robinson, 433 F.3d at 35. While all § 3353(a) factors must be considered by this Court, "it is not required to address those factors, one by one, in some sort of rote incantation when explicating its sentencing decision." Dixon, 449 F.3d at 205; see also United States v. Navedo-Concepcion, 450 F.3d 54, 57-58 (1st Cir. 2006) (reasoning that in every decision the main factors contributing to the sentence must be identified by the sentencing court, but there is no "requirement for a lengthy or detailed recitation or one addressing every claim and counter-argument; rather, the reviewing court needs, and both parties deserve, a *specific* explanation and not just a reference to the evidence.").[1]

The government explains below its view of the proper consideration in this case of the guideline application and Section 3553(a) factors.

---

[1] As this Court is aware, following a ten-day trial, a jury returned guilty verdicts against five of the eleven codefendants in this case -- Julio SANTIAGO, Juan NUNEZ, Carlos COLON, Jose RODRIGUEZ, and Carlos SANCHEZ -- with respect to Count One of the Superseding Indictment. The jury also found Julio SANTIAGO guilty of the firearms offenses set forth in Count Seven, namely, possession of firearms in furtherance of a drug trafficking crime, and possession of unregistered firearms, to wit: silencers, (Count Eight). The jury further found that the conspiracy as a whole was responsible for more than 1,000 grams of heroin. With the exception of Enrique AGOSTO, the remaining defendants -- Reynaldo RIVERA, Zuleima REYES, Santiago ARROYO, Jose TORRADO, and Luis SANCHEZ -- have all pleaded guilty before the Honorable Nathaniel M. Gorton to Counts One of the Superseding Indictment. AGOSTO was severed from his co-defendants for purposes of trial and the charges against him remain outstanding. Jose TORRADO is the only defendant to have been sentenced in this case. On June 2, 2006, TORRADO pleaded guilty before the Honorable Nathaniel M. Gorton to Count One of the Superseding Indictment. He was sentenced that same date to a minimum mandatory 60 months imprisonment and 4 years' supervised release.

## **ANALYSIS**

Although there is no written plea agreement, the government and TORREZ agree that TORREZ is responsible for between 60 and 80 grams of heroin, and that his Base Level Offense is 22. The parties arrive at that calculation by attributing the following amounts to TORREZ:

| | | |
|---|---|---|
| 06/07/04 | 16 grams | (coded as "$16.00 for the registry") |
| 06/30/04 | 20 grams | (coded as "two good pesos for Taylor") |
| 08/20/04 | 20 grams | (meet at Foundry Street) |
| 09/02/04 | 20 grams | (meet at TAVO's) |
| **TOTAL** | **76 grams** | |

According to the PSR, TORREZ is a Criminal History Category I and is therefore safety-valve eligible under §§ 5C1.2 and 2D1.1(b)(7), provided that he satisfies criterion 5.[2] (PSR ¶¶ 183-184). With a three-level adjustment for acceptance of responsibility, TORREZ's Total Offense Level is 19 and his GSR is 30 to 37 months. (PSR ¶¶ 184).

    A       Importance of the Guideline Range.

Even though the guidelines are advisory, the First Circuit has ruled that the guidelines remain a central component of any sentencing post-Booker. Jiménez-Beltre, 440 F.3d at 518; see also United States v. Kandirakis, No. 04-10372-WGY, 2006 WL 2147610, at *10 (1st Cir. August 1, 2006) (stating "the Guidelines - and their judge-made factual findings - are still the driving force behind federal sentencing"). The First Circuit explained that the "guidelines remained 'an important consideration' because they represented the only 'integration of the multiple factors' identified in the statute, often reflected past practice, and bore the imprimatur of

---

    [2]As of the date of this memorandum, TORREZ has not met this requirement of safety-valve eligibility and it is not anticipated that he will do so.

the [Sentencing Commission] expert agency charged with developing them." United States v. Smith, 445 F.3d 1, 4 (1st Cir. 2006), quoting Jiménez-Beltre, 440 F.3d at 518. The continuing importance of the guidelines is such that the more the judge's sentence differs from the advisory guideline range - either higher or lower - the more compelling the judge's justification must be for the atypical sentence. See Kandirakis, 2006 WL 2147610, at *11; United States v. Thurston, No. 05-2271, 2006 WL 2065404, at *4 (1st Cir. July 26, 2006); Smith, 445 F.3d at 4.

The importance of the final guideline range has nothing to do with the guidelines' former mandatory status, which was eliminated in Booker. Instead, reasonableness is judged in relation to the guidelines for three reasons adopted by the First Circuit in United States v. Jiménez-Beltre: (1) only the guidelines comprehensively examine the full panoply of sentencing considerations; (2) the guidelines represent decades of nationwide experience and study; and (3) they are the only measure for avoiding unwarranted sentencing disparities. See 440 F.3d at 518. Congress explicitly created the Sentencing Commission and guidelines to achieve these ends. Id.

The continued adherence to the now advisory guidelines remains evident in appellate courts across the country. While courts have repeatedly reversed as unreasonable sentences outside the applicable guideline ranges,[3] reversals of sentences imposed within the guideline range have been extraordinarily rare. Kandirakis, 2006 WL 2147610, at *43 n.36; see also

---

[3] See, e.g, Zapete-Garcia, 447 F.3d at 60 (holding that defendant's forty-eight month sentence – eight times the maximum of the advisory sentencing guideline range – was unreasonable as the district court failed to provide a reason for such a mammoth variance and neither defendant's prior deportations or arrest justified the increase); Smith, 445 F.3d at 5-6 (finding that defendant's forty-six month sentence – less than half the minimum advisory guideline range – for six counts of crack distribution and one count conspiring to sell narcotics was unreasonable as the defendant's minor role was taken into account in the guideline calculation and the defendant had previously sold narcotics near schools, violated post-arrest release terms, and had no better than usual rehabilitation prospects).

United States v. Cooper, 437 F.3d 324, 331 (3d Cir. 2006) ("[I]t is less likely that a within-guidelines sentence, as opposed to an outside-guidelines sentence, will be unreasonable"); United States v. Mares, 402 F.3d 511, 519 (5th Cir. 2005) ("[I]t will be rare for a reviewing court to say [a within-Guidelines sentence] is 'unreasonable.'"). In the post-Booker era, only one within-guidelines sentence has been found blatantly unreasonable. United States v. Lazenby, 439 F.3d 928, 933 (8th Cir. 2006) (sentence based on comparison to co-defendant's sentence found unreasonable). Furthermore, just two additional sentences have been reversed where the appellate court determined that the district court judge failed to provide an adequate explanation of the within-guidelines sentence. United States v. Carty, 453 F.3d 1214 (9th Cir. 2006); United States v. Vonner, 452 F.3d 560 (6th Cir. 2006). Moreover, the First Circuit and its sister circuits have emphasized that the further outside the range, either above or below, a sentence falls, the stronger must be the justification for such disparate sentencing.

Against this backdrop, the government turns to the defendant's first argument -- which is actually a convolution of the consideration set forth in §3553(a)(1), (addressing the nature and circumstances of the offense), and a request for a departure based upon a minor or minimal role adjustment under U.S.S.G. § 3B1.2.

Despite defendant's claim to the contrary, Torrez was a significant participant in the conspiracy for which he is being held accountable and he should not receive either a minimal or minor role reduction under U.S.S.G. §3B1.2. Role adjustments are "heavily dependent upon the facts of the particular case." U.S.S.G. § 3B1.2, n.3(C). To receive any reduction, Torrez must show that he is "substantially less culpable than the average participant." U.S.S.G. §3B1.2, Application Note 3(A); see United States v. Lopez-Gil, 965 F.2d 1124, 1131 (1st Cir. 1992)("defendant has

5

burden of proving entitlement to such a downward adjustment") citing United States v. Ocasio, 914 F.2d 330, 332 (1st Cir. 1990). Moreover, the Guidelines caution that the minimal participant adjustment is to be used "infrequently."

Here, Torrez obtained multiple amounts of heroin for redistribution from Santiago on at least four occasions from June 2004 through September 2004. He was not, as the defense suggests, "a limited courier of information and contraband" or a "runner" who simply obeyed orders. (D.Br. 2). His storage facility held accouterments associated with a fairly significant heroin distribution point -- a digital scale; drug packaging materials associated with street-level distribution, including "It's Hot" and Apple baggies; a diluent used to increase the amount of heroin available for sale and thereby maximize profits; spoons and sandwich baggies. In June 2004, he was intercepted ordering "two of the good ones for Taylor" from Santiago (the parties agree that this coded conversation refers to two "fingers" or 20 grams of heroin). Agents then observed Torrez meeting with Santiago at his storage facility. This evidence directly undermines the theory that he was simply a mule or transporter of narcotics who had no input into the quantities of heroin sold, customers, or price.

Moreover, the trial testimony of expert witness Jamie Cepero and Task Force Agent Marcos Chavez established that one gram of heroin could be "cut" or diluted to 100 "hits" of heroin on the street (making the 76 grams of heroin equivalent to 7,600 "hits" of heroin once it is sold to the consumer in baggies like the "It's Hot" baggies found in Torrez's storage facility). He cannot, and should not, be deemed a "minor" or "minimal" participant under U.S.S.G. §3B1.2.

Even assuming that defendant is less culpable than Santiago or Juan Nunez, the leaders in this conspiracy scheme, Torrez simply cannot establish that he is less culpable than most others involved in this particular offense. Based upon the extensive evidence set forth in the Offense

Conduct of the PSR, Torrez clearly was at the same level in the distribution chain as Luis Sanchez, Enrique Agosto, Jose Rodriguez, Jose Torrado, and Carlos Colon (a/k/a Pedro Miranda). Arguably, he was situated above the likes of Santiago Arroyo and Zuleima Reyes, who, it could be argued, acted as runners for Reynaldo Rivera.

Moreover, it cannot be said that Torrez is "less culpable than the average participant" in a similar conspiracy. Torrez must not only show that he is less culpable than most others involved in this particular offense, but that he is less culpable than defendants charged in similar cases. See United States v. Ortiz-Santiago, 211 F.3d 146, 149 (1st Cir. 2000)("defendant has the burden of proving that he is both less culpable than most others involved in the offense of conviction and less culpable than most other miscreants convicted of comparable crimes."). This he cannot do

Recently, in United States v. Cao, No. 06-1224 (C.A. 1 (Me) December 15, 2006), the First Circuit affirmed the district court's decision at sentencing not to give the defendant a role reduction as a minor or minimal participant. Even though the defendant was less culpable than the leaders of the conspiracy, "that is not enough: he was required to show that he was less culpable than the average participant, a judgment normally made not with statistics but by practical indicia like role, frequency, and duration." Id. at 4. The Court in *Cao* observed that the district court's decision was supported by the fact that the defendant made multiple trips over time between Massachusetts and Maine, bringing drugs to Maine and money to Massachusetts, and supplying multiple customers. Id.

If anything, Torrez was more culpable than the average participant in a similar conspiracy because he substantially participated in the charged criminal conduct by accepting large amounts of heroin and processing it for redistribution with the implements found in his storage locker.

7

Consequently, he was not a "minor" or "minimal" participant in the conduct for which he is being held accountable. Probation concurs in this judgment. See PSR ¶ 135.

B.    Application of the § 3553(a) Factors.

In this case, no unusual circumstances exist which warrant an exception to the preference for guideline sentencing. Section 3553(a)(4) and (5) specifically direct the Court to consider the applicable guidelines, and Section 3553(a)(6) commands that the Court strive to avoid disparity in sentencing, which, as explained above, is best accomplished through faithful application of the guidelines. The other 3553(a) factors also point to this conclusion.

Torrez reports no significant physical impairments aside from high blood pressure, for which he is receiving medication(PSR ¶164). He reports good mental and emotional health and does not feel the need for psychological assistance (PSR ¶165). Torrez reports no history of substance abuse or alcoholism (PSR ¶¶ 167-168). Although he has limited education,(PSR ¶169), he has at times maintained steady employment(PSR ¶¶ 173-174).

In short, the PSR reflects nothing unusual or extraordinary in Torrez's background to justify taking him outside of the heartland of cases already addressed by the Sentencing Guidelines absent a motion by the government. C.f., Koon v. United States, 518 U.S. 81, 116 S.Ct. 2035, 2047 (1996) ("[b]efore a departure is permitted, certain aspects of the case must be found unusual enough for it to fall outside the heartland of cases in the Guideline"). His receipt of multiple deliveries of high-grade heroin demonstrate that this was no "aberration," as the defense suggests, and the government for its part is none too convinced that the defendant "will never come before any court again." (D.Br. 3).

Torrez chose to inject poison into the Greater Lowell community simply as a means to

make money. To reflect the seriousness of the offense, to promote respect for the law and provide just punishment, to afford adequate deterrence and to protect the public, nothing should steer him outside the federal sentencing guideline range. *See United States v. Thurston*, No. 05-2271 (1st Cir. July 26, 2006) (discussing Congressional goal of promoting national uniformity in sentencing).

                                        RESPECTFULLY SUBMITTED
                                        MICHAEL J. SULLIVAN
                                        United States Attorney

By:    */s/ William F. Bloomer*
        WILLIAM BLOOMER
        Assistant U.S. Attorney
        BBO#553104
        william.bloomer@usdoj.gov
        (617) 748-3644

**CERTIFICATE OF SERVICE**

     I, William F. Bloomer, hereby certify that this document filed through the ECF system on January 10, 2007, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

                                        */s/William F. Bloomer*
                                        WILLIAM F. BLOOMER

Date: 10 January 2007